NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ORAL CANCER PREVENTION INTERNATIONAL, INC.<br><br>Plaintiff,<br><br>v.<br><br>JOHNSON & JOHNSON, and JOHNSON & JOHNSON CONSUMER COMPANIES, INC.<br><br>Defendants. | Civil Action No. 3:11-cv-3878 (PGS)<br><br><br>**MEMORANDUM & ORDER** |

**SHERIDAN, U.S.D.J.**

This matter comes before the Court by Defendants', Johnson & Johnson ("J&J") and Johnson & Johnson Consumer Companies, Inc., ("JJCCI"), motion to compel arbitration and stay the litigation. Plaintiff, Oral Cancer Prevention International ("OCPI"), has opposed this motion in favor of allowing its claims to proceed in this litigation rather than arbitration. OCPI's diversity action has raised three common law claims in the complaint: (1) fraud; (2) tortious interference with contract; and (3) civil conspiracy. OCPI argues that its claims are outside the scope of the arbitration agreement of which defendants are non-signatories, and it would be inequitable to allow the defendants to compel arbitration. For the reasons set forth below, the Court will grant Defendants' motion to compel arbitration and stay this litigation.

## I.  FACTUAL BACKGROUND

The following facts are alleged in OCPI's complaint.  OCPI has developed and patented a product known as the OralCDx Brush Test that is used for early detection of oral cancer.  At the time of the product's development, OCPI recognized that oral cancer is on the rise worldwide and only a few simple tests for early detection existed.  OCPI has worked with the American Dental Association to advertise its OralCDx Brush as a quick, painless, and inexpensive test that uses a patented brush to collect cells that are analyzed at OCPI laboratories for preventative pre-cancer screening and detection.  OCPI intended to market and distribute its product among dentists to be used for routine screening of patients.

In 2008 and 2009 OCPI had a four person sales team that generated 2,000 laboratory tests per month.  In 2009, OCPI was approached by OraPharma, a subsidiary of J&J, to be the exclusive sales representative for the OralCDx Brush Test.  OraPharma was reputed to have an expertly trained and well-managed sales force within the dental industry with approximately 100 sales representatives reaching 50,000 dental practices nationwide, and selling products like Arestin (antibiotic treatment of periodontal disease) and Listerine[1] that aimed to protect and improve the health of oral soft tissue. Of OraPharma's 50,000 dental practice customers, 20,000 accounted for 80% of sales, and were known as OraPharma's "Prime Customers."  Since OCPI's OralCDx Brush also relates to healthy maintenance of oral soft tissue, OraPharma was capable of selling the OralCDx Brush alongside its existing products.

---

[1] J&J acquired Listerine through its purchase of Pfizer's consumer health care unit in 2006.

On February 5, 2010, OCPI entered into a Sales Services Agreement ("Sales Agreement" or "Agreement") with OraPharma after a year of extensive negotiations. The Sales Agreement provided that OraPharma would exclusively market the OralCDx Brush. Sales Agreement § 2.01. The provisions at issue in the Sales Agreement are the assignment clause and the arbitration clause. Sales Agreement §§ 14.02, 14.06.

Once the Sales Agreement was executed, OraPharma's marketing projections required OCPI to handle at least 20,000 laboratory tests per month within the first six months of the Agreement. In reliance on these projections, OCPI raised $5 million to expand its laboratories. However, in the first six months of the Agreement, OCPI alleges that the OralCDx Brush was only marketed to a small percentage of OraPharma's dental customers who were least likely to purchase products relating to oral soft tissue care. OCPI suggests that the reason for the limited roll out of the OralCDx Brush was because of a study published in 2008 in the Dental Journal of Australia ("Australian study"). The Australian study identified a potential link between mouthwash with high alcohol content to an increased risk of oral cancer. OCPI contends that Listerine has the highest alcohol content of any over-the-counter mouthwash, and J&J was concerned that if OraPharma were to sell both Listerine and the OralCDx Brush, J&J would be tacitly validating the Australian study.

OCPI asserts that J&J also launched Listerine Zero, an alcohol-free mouthwash, soon after the Sales Agreement was executed, which was in direct response to the concerns raised in the Australian study. OCPI contends that OraPharma never executed a nationwide launch of the OralCDx Brush to its 50,000 dental customers because of J&J's tortious conduct.

J&J sold OraPharma in December 2010 to Water Street Healthcare Partners. In Early 2011, OraPharma terminated the Sales Agreement with OCPI consistent with the termination clause.

Thereafter in July 2011, OCPI filed the instant action against defendants in this Court; notably, OraPharma is not named as a defendant.

## II. DISCUSSION

### A. Legal Standard

A motion to compel arbitration and stay the litigation may be treated as a motion for summary judgment. *Kaneff v. Del. Title Loans, Inc.*, 587 F.3d 616, 620 (3d Cir. 2009). Accordingly, the issue of whether the defendants, as non-signatories to the Sales Agreement, can compel OCPI to arbitrate its claims will be decided under the summary judgment standard. All reasonable doubts and inferences will be in favor of OCPI as the party opposing arbitration. *Id.*

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey*

*Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985).  The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial.  *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995).  "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fidelity Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial").  Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgement.  *Anderson*, 477 U.S. at 247-48.  If a court determines, "after drawing all inferences in favor of [the non-moving party], and making all credibility determinations in his favor – that no reasonable jury could find for him, summary judgment is appropriate." *Alevras v. Tacopina*, 226 Fed. App'x. 222, 227 (3d Cir. 2007).  The court will apply this *s*tandard to each of the Plaintiff's claims.

**B.  The Federal Arbitration Act**

The Federal Arbitration Act (FAA) governs whether an arbitration agreement is valid and enforceable, and whether a dispute that gave rise to litigation falls within the scope of an arbitration agreement.  9 U.S.C. §§ 1, 2; *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also Becker Autoradio U.S.A., Inc. v. Becker Autoradiowerk GmbH*, 585 F.2d 39, 43 (3d Cir. 1978).  The FAA establishes a strong federal policy in favor of arbitration by providing that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable."
9 U.S.C. § 2.  The rationale behind this policy is to enforce private contractual agreements.  *E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001).  Before parties are compelled to arbitrate, the court must determine if (1) there

is a valid agreement to arbitrate; and (2) the dispute at issue falls within the scope of that agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). This Circuit has held that under the FAA "a court may only compel a party to arbitrate where that party has entered into a written agreement to arbitrate that covers the dispute." *E.I. DuPont*, 269 F.3d at 194 (quoting *Bel-Ray Co., Inc. v. Chemrite (Pty) Ltd.*, 181 F.3d 435, 444 (3d Cir. 1999)); *see also Smith/Enron Cogeneration LP, Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 95 (2d Cir. 1999) ("whether an entity is a party to the arbitration agreement [] is included within the broader issue of whether the parties agreed to arbitrate."). It is undisputed that the Sales Agreement contains a valid and enforceable arbitration clause that requires OCPI and OraPharma to submit to binding arbitration in New York for "any controversy or claim arising out of or relating" to the Agreement. The issue here is whether the defendants, as non-signatories to the Sales Agreement, may compel OCPI to arbitrate its claims.

**C. Did the Arbitration Agreement Terminate with the Sales Agreement?**

Neither of the parties raised the issue of whether J&J's transfer of the Sales Agreement to a third party, Water Street Healthcare Partners[2], and the Agreement's subsequent termination rendered the arbitration clause to be void and unenforceable by J&J. This is a preliminary issue that should be addressed before determining whether there is a valid agreement to arbitrate. In the context of disputes arising under collective bargaining agreements, the U.S. Supreme Court has held that an arbitration clause within a contract does not terminate when the contract is terminated. Specifically,

> If the contract does not state that the duty to arbitrate ends with the termination of the

---

[2] By way of J&J's divestiture of OraPharma to Water Street Healthcare Partners.

      contract, the strong policies favoring arbitration should ordinarily lead the court to conclude that the obligation to arbitrate- especially as to claims that accrued during the term of the contract- survives the expiration of the contract. *Butchers, Food Handlers and Allied Workers Union v. Hebrew Nat'l Kosher Foods, Inc.*, 818 F.2d 283, 287 (2d Cir. 1987) (citing *Nolde Bros. V. Local No. 358, Bakery & confectionary Workers Union*, 430 U.S. 243, 250-51 (1977). *See also Emery Air Freight Corp. v. Local Union 295*, 786 F.2d 93, 97-98 (2d Cir. 1986).[3]

Here, the arbitration clause does not expressly state that the right to arbitrate terminates once the Sales Agreement is terminated. Additionally, OCPI's claims against defendants arose during the term of the Agreement. Thus, consistent with the strong policy in favor of arbitration, the arbitration clause in the Sales Agreement is still enforceable for OCPI's claims arising during the term of the Agreement, even though the Agreement has since terminated.

**D. Is There A Valid Agreement to Arbitrate?**

      The defendants acknowledge that they are not signatories to the Sales Agreement, but argue that they can compel OCPI to arbitrate on two grounds: (1) JJCCI is a party to the Sales Agreement by virtue of OraPharma's oral assignment of certain rights and obligations under the Agreement to JJCCI, and (2) the principle of equitable estoppel applies to prevent OPCI from avoiding the arbitration clause, and allows defendants to compel arbitration as non-signatories to the Sales Agreement.

      **1. Assignment to JJCCI**

      Defendants argue that OraPharma orally assigned certain rights and obligations under the Sales Agreement to JJCCI as an Affiliate, which establishes JJCCI as a party under the Agreement. The defendants rely on the assignment clause, which, in relevant part, provides that

---

[3] *See infra* D.1. New York law governs contract formation and interpretation of the Sales Agreement.

> This Agreement, or any of the rights and obligations created herein, shall not be assigned or transferred, in whole or in part, by either Party hereto without the prior written consent of the other Party; provided, however, that OraPharma shall have the right to assign any or all of its rights or obligations under this Agreement to any Affiliate, or a successor to that part of its business to which this Agreement relates, without such prior written consent . . . [T]his Agreement shall bind and inure to the benefit of the Parties hereto and their respective successors and assigns.

OCPI argues that there is no evidence that an oral assignment was ever made from OraPharma to JJCCI. OCPI relies on *Property Asset Mgmt., Inc. v. Chicago Title Ins. Co.* to demonstrate that defendants have not satisfied their burden of proving the existence of an assignment because under New York law "there is a need for some 'act or words' that manifest an intent to assign." 173 F.3d 84, 87 (2d Cir. 1999).

To decide the construction of the contract language, the Court will look to the state law principles that governed contract formation. *Century Indem. Co.*, 584 F.3d at 524. Here, New York law governs the Sales Agreement. Sales Agreement § 14.12. Under New York law, an oral assignment of contractual rights is valid provided there is consideration between the parties. *Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. Of Contemporary Dance, Inc.*, 380 F.3d 624, 643-44 (2d Cir. 2004). In the absence of a written assignment agreement, the court can look to other evidence of the assignment including testimony from an employee regarding the contractual rights that had been assigned. *Id.* Additionally, for an assignment to be valid under New York law, "no particular words are necessary . . . it is only required that there be a perfected transaction between the assignor and assignee, intended by those parties to vest in the assignee a **present** right in the things assigned." *Leon v. Martinez*, 84 N.Y.2d 83, 88 (N.Y. Ct. App. 1994) (emphasis added).

The Sales Agreement permits OraPharma to assign its rights to any Affiliate without prior written consent. The Agreement defines "Affiliate" as "any Person [including corporations] that directly or indirectly controls, is controlled by or is under common control with such Party." Sales Agreement §1.01(c). JJCCI, as an operating subsidiary for J&J's consumer healthcare products unit, is under common control by J&J, as is OraPharma, and can be deemed an "Affiliate" within the meaning of the Agreement. Furthermore, a JJCCI employee certified to the functions that were assigned from OraPharma to JJCCI while the Agreement was in effect, and even after J&J's divestiture of OraPharma. The assigned functions included the development of marketing plans (Sales Agreement § 2.01); review of marketing materials (Sales Agreement § 2.03(b)(vii), 6.01(b)); regulatory compliance (Sales Agreement § 2.03(c)(iv); customer information (Sales Agreement § 2.05); and quality control (Sales Agreement Ex. E). JJCCI also certified that OraPharma reimbursed JJCCI for the assigned functions that JJCCI employees performed, which constitutes valid consideration for the assignment. Thus, JJCCI has demonstrated a "perfected transaction" between OraPharma, as the assignor, and JJCCI, as the assignee, to perform certain rights and obligations during the course of the Sales Agreement. Accordingly, JJCCI is bound to the Sales Agreement by virtue of the assignment.

**2. Equitable Estoppel**

Courts have held that a non-signatory may compel a signatory to arbitration so long as the non-signatory is bound to the arbitration agreement by ordinary principles of contract and agency law such as third party beneficiary, a principal-agent relationship, and equitable estoppel. *E.I. DuPont*, 269 F.3d at 194; *see also Thomson-CSF, S.A. v. American Arbitration Assoc.*, 64 F.3d 773, 778 (2d Cir. 1995). Here, the defendants argue that they can compel OCPI to arbitration based on the

principle of equitable estoppel.  OCPI argues that it would be inequitable to allow the defendants to enforce an arbitration agreement as a non-signatory when OCPI's claims are a result of defendants' alleged tortious conduct, which is independent of the Sales Agreement.

Courts generally follow one of two theories to bind a non-signatory to an arbitration agreement under the principle of equitable estoppel. *See, e.g., E.I. DuPont*, 269 F.3d at 199.  Under the first theory, courts have bound a non-signatory to an arbitration agreement where the non-signatory attempts to exploit certain provisions within a contract, but denies being bound to the arbitration clause within that contract.  *Id.* at 200. Under this theory, the non-signatory is estopped from rejecting the arbitration clause while accepting other provisions within the contract.  *Id.*  Under the second theory, a non-signatory to the arbitration agreement may compel a signatory to arbitrate a dispute once the court has assessed that (1) there is a close relationship between the entities involved, (2) the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract, and (3) the claims were intertwined with the underlying contractual obligations.  *Id.* at 201 (citing *Thomson-CSF, S.A.*, 64 F.3d at 776.  The second theory of equitable estoppel requires a fact specific analysis of those three factors.  *JLM Indus. v. Stolt-Nielsen, S.A.,* 387 F.3d 163, 177-78 (2d Cir. 2004).  The Court will evaluate whether equitable estoppel under the second theory applies to the present matter.

Courts have applied the second theory of equitable estoppel to cases that are factually similar to the present matter.  The defendants relied on the following cases in support of its argument that they may compel OCPI to arbitration.  In most of these cases, the court declined to apply equitable estoppel, but the cases establish the general proposition that a non-signatory may compel a signatory to arbitrate a dispute after careful review of the relationship among the parties, the

contracts they signed, and whether the dispute is related to that contract. *See JLM Indus.,* 387 F.3d at 177.  OCPI's attempts to distinguish each of these cases from the present matter is unavailing because each case is analyzed on its own set of facts.

In *E.I. Dupont*, the court held that a signatory can be estopped from avoiding arbitration with a non-signatory when the issues to be resolved in arbitration are intertwined with the contract.  269 F.3d at. 202; *see also Thomson-CSF*, 64 F.3d at 779.  The court declined to apply equitable estoppel because the court found that the plaintiff's claims for breach of an oral agreement and fraudulent misrepresentations occurred much later in time than the execution of the contract, and therefore the claims were not sufficiently intertwined with the contract containing the arbitration clause. *Id.*  In *PNY Technologies v. Samsung Elec. Co., Ltd.*, the court applied the fact specific analysis and held that a non-signatory, that was an affiliate of a signatory, may compel arbitration where the arbitration clause in one agreement extended to the dispute that arose under another agreement between the parties.  No. 10-4587, 2011 WL 900154 (D.N.J. March 14, 2011).  The court estopped PNY from avoiding arbitration because PNY selectively chose to differentiate its claims against Samsung and its affiliates in an effort to avoid the arbitration clause. *Id.* at *8.  Defendants also rely on *Orange Chicken, L.L.C. v. Nambe Mills, Inc.*, to demonstrate that equitable estoppel under the second theory is recognized in the Second Circuit. No. No. 00 civ. 4730, 2000 WL 1858556 (S.D.N.Y. Dec. 19, 2000).  After applying the fact specific analysis, the court held that equitable estoppel did not apply because plaintiff's claims for false advertising and disparagement against its retail competitor defendants were unrelated to plaintiff's license and sales agreement with a mutual third party.  In *Denney v. Jenkens & Gilchrist*, the court held that for claims to be intertwined with the contract then"[a]t a minimum, the signatory's claims must 'make [] reference to or presume [] the existence

11

of the written agreement.'" 412 F. Supp.2d 293, 298 (S.D.N.Y. 2005)(quoting *JLM Indus.*, 387 F.3d at 178). The court also noted that the purpose of equitable estoppel is to prevent a plaintiff from relying on a contract to establish a claim, but then rejecting that contract's arbitration clause. *Id.* at 298. Ultimately, the court held that the plaintiff's claims were not intertwined with the contract because even if the contract was void, invalid or unenforceable, the plaintiff's claims against the non-signatory could still proceed.

Upon review of OCPI's allegations in its complaint, the relationship of the parties, the Sales Agreement, and the issues in dispute, the Court finds that the defendants may compel OCPI to arbitration based on the principle of equitable estoppel. First, as to the relationship between the entities involved, OCPI entered into the Sales Agreement with OraPharma, a subsidiary of J&J, and OraPharma assigned certain rights and obligations under the Agreement to JJCCI, also a subsidiary of J&J, and an Affiliate to OraPharma within the meaning of the Sales Agreement. Therefore, a "close relationship" exists among OCPI, J&J and JJCCI. Second, the alleged wrongs of defendants, as non-signatories to the Agreement, are directly related to OraPharma's obligations under the Agreement. Specifically, OCPI's fundamental argument is that OraPharma was unable to perform its obligations under the Agreement because of defendants' tortious conduct. Third, OCPI has asserted three common law claims against defendants for fraudulent inducement to enter into the Sales Agreement, tortious interference with the Sales Agreement, and civil conspiracy. Each of OCPI's claims make reference to and requires the existence of the Sales Agreement. *See Denney*, 412 F. Supp.2d at 298; *JLM Indus.*, 387 F.3d at 178. Thus, OCPI's claims are sufficiently intertwined with the underlying contractual obligations in the Sales Agreement. The court finds that the facts in this case satisfy the three factor analysis to equitably estop OCPI from avoiding

arbitration with the defendants.  Accordingly, there is a valid agreement to arbitrate between the parties in this action.

**E.  The Scope of the Agreement**

Having determined that there is a valid agreement to arbitrate that can be enforced between OCPI and the defendants, the next inquiry is whether OCPI's claims fall within the scope of the arbitration clause.  To determine whether particular claims fall within the scope of an arbitration clause, courts focus on the factual allegations in the complaint rather than the legal causes of action asserted.  *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Inc.*, 473 U.S. 614, 622 n.9 (1985). If the underlying factual allegations in the complaint "touch matters" covered by the contract containing the arbitration clause, then those claims are arbitrable, notwithstanding the legal labels for those claims.  *Id.* at 625 n. 13.

Applying this standard to the present matter, the Court finds that each of OCPI's claims are arbitrable as a matter of law.  OCPI's complaint alleges that J&J fraudulently induced OCPI to enter into the Sales Agreement with OraPharma; J&J tortiously interfered with the Sales Agreement causing OraPharma to breach that Agreement; and J&J and JJCCI conspired to fraudulently induce OCPI to enter into the Sales Agreement. Compl. ¶¶ 64, 69-70, 76-77.  OCPI alleges that defendants' tortious conduct was for the purpose of suppressing sales and public awareness of the OralCDx Brush in order to protect sales of Listerine, which may have a causal link to oral cancer.  Compl. ¶ 1.  Legal labels aside, the essence of OCPI's complaint is that because of defendants' actions, OraPharma breached the terms of the Sales Agreement by not marketing and distributing the OralCDx Brush.   These factual allegations necessarily "touch matters" covered by the Sales Agreement, including contract formation, interpretation, and performance.

The Court further finds that the arbitration clause is sufficiently broad to encompass all of OCPI's claims against defendants. The arbitration clause states in relevant part,

> Any controversy or claim arising out of or relating to this Agreement shall be resolved by arbitration before a panel of three arbitrators in accordance with the Commercial Arbitration Rules of the American Arbitration Association . . .The arbitration shall be held in New York and the arbitrator shall apply the substantive law of New York, except that the interpretation and enforcement of this arbitration provision shall be governed by the Federal Arbitration Act . . .EACH PARTY HERETO WAIVES ITS RIGHT TO TRIAL O F ANY ISSUE BY JURY.
> Sales Agreement § 14.02.

In furtherance of the strong policy in favor of arbitration, any doubts as to whether a dispute is covered by an arbitration agreement is resolved in favor of arbitration. *Battaglia v. McKendry*, 233 F.3d 720, 727 (3d Cir. 2000) (citing *AT&T Techs., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 650 (1986)). The arbitration clause provides that "any controversy or claim arising out of or relating to this Agreement" must be resolved by arbitration. Sales Agreement § 14.01. Generally, arbitration clauses that have phrases such as 'arising under' and 'arising out of' are given broad construction. *Id.* In light of the presumption in favor of arbitration and the broad construction of the arbitration clause under the Sales Agreement, OCPI's claims are properly within the scope of the arbitration clause.

OCPI has attempted to distinguish its claims against defendants as independent tort claims that are unrelated to the Sales Agreement and therefore not subject to the Agreement's arbitration clause. The Second and Third Circuits have rejected OCPI's strategy to distinguish tort claims from breach of contract claims to avoid arbitration agreements. The Third Circuit has held that "[i]t is well established that where separate tort claims arise out of the same facts as the breach of contract claim, a broadly worded arbitration provision covers such claims." *U.S. Claims, Inc. v. Saffren &*

14

*Weinberg, LLP*, No. 07-0543, 2007 WL 4225536 (E.D.Pa. Nov. 29, 2007). The Second Circuit has held that a "[p]laintiff cannot avoid the broad language of the arbitration clause by casting its complaint in tort" when the claim is based on a breach of contract. *Altshul Stern & Co., Inc. v. Mitsui Bussan Kaisha, Ltd.*, 385 F.2d 158, 159 (2d Cir. 1967) (holding that a civil conspiracy claim was arbitrable because it was based on a breach of contract claim). It is also well established that fraudulent inducement claims have been held to be arbitrable as a matter of law. *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 854 (2d Cir. 1987) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402-07 (1967)); *see also Smith/Enron Cogeneration L.P., Inc. v. Smith Cogeneration Int'l, Inc.*, 198 F.3d 88, 99 (2d Cir. 1999). Accordingly, OCPI's claims of fraudulent inducement, tortious interference, and civil conspiracy against defendants are common law torts that are directly related to OraPharma's breach of the contract. OCPI cannot avoid the Agreement's mandate to arbitrate claims by simply failing to bring a breach of contract claim against OraPharma. The court finds that without an alleged breach of the Agreement, OCPI would not have a foundation for its present claims against defendants.

### III. CONCLUSION

For the reasons set forth above, the defendants' motion to compel arbitration and stay this litigation is granted. The defendants, as non-signatories to the Sales Agreement can compel plaintiff to arbitrate its claims consistent with the arbitration clause under the Sales Agreement under a theory of equitable estoppel. The Court will enter an order enforcing the arbitration clause in the Sales Agreement so that plaintiff's claims for fraudulent inducement, tortious interference, and civil conspiracy against defendants are held to be arbitrable as a matter of law.

**ORDER**

**IT IS** on this 7th day of December, 2011

**ORDERED** that defendants' motion to compel arbitration and stay the litigation is GRANTED. The arbitration clause in the Sales Agreement is enforced and plaintiff's claims are arbitrable as a matter of law; and it is further

**ORDERED** that the Clerk administratively terminate this action without prejudice. The parties have the right to reopen the proceedings for good cause shown for the entry of any stipulation or order, or for any other purpose required to obtain a final determination of the litigation.

*s/Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.